UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUDITH SULLIVAN                                     CIVIL ACTION

VERSUS                                             NO. 14-140

CAROLYN W. COLVIN, ACTING                          SECTION "H" (2)
 COMMISSIONER OF SOCIAL SECURITY


## FINDINGS AND RECOMMENDATION

Plaintiff, Judith Sullivan, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration ("Commissioner"), denying plaintiff's applications for disability

insurance benefits ("DIB") and supplemental security income benefits ("SSI") under

Titles II and XVI of the Act.  42 U.S.C. §§ 423, 1382c.  This matter was referred to a

United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Sullivan filed her applications for DIB and SSI on September 25, 2011, alleging

disability beginning March 7, 2011, due to fibromyalgia, neuropathy, a herniated disc

and arthritis of the spine.  (Tr. 263-70, 284).  After her claims were denied at the agency

level, she requested a hearing before an Administrative Law Judge (ALJ), which was

held on September 6, 2012.  At the hearing, plaintiff amended her alleged onset date to

September 21, 2011.  On October 23, 2012, the ALJ issued a decision denying the

applications for benefits.  (Tr. 146-59).  After the Appeals Council denied plaintiff's

request for review on November 18, 2013, the ALJ's decision became the Commissioner's final decision for purposes of this court's review.  (Tr. 1-5).

Plaintiff filed a timely memorandum of facts and law.  Record Doc. No. 11. Defendant filed a timely reply memorandum.  Record Doc. No. 12.

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The Appeals Council failed to evaluate new and material evidence that was submitted to it.

B   Substantial evidence does not support the ALJ's severe impairment finding.

C.   Substantial evidence does not support the ALJ's residual functional capacity finding.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Sullivan has severe impairments of fibromyalgia, mild polyneuropathy and major depressive disorder.

2.   She has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except no climbing of ladders, ropes or scaffolds; only occasional stooping, kneeling, crouching or crawling; no work on vibrating and uneven surfaces; and work of a simple routine nature with no public contact.

3.   Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.  However, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

4.   She is unable to perform any past relevant work.

2

5.      Plaintiff was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

6.      She has at least a high school education and is able to communicate in English.

7.      Considering Sullivan's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that she can perform, such as office clerk, stock clerk/order filler and dishwasher.

8.      She has not been under a disability, as defined in the Act, from September 21, 2011, through the date of the decision.

(Tr. 151-58).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).   Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at

3

363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI or DIB,[1] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2012). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[2] Id. §§ 404.1520, 416.920;

---

[1]The relevant law and regulations governing claims for DIB and SSI are identical. Carmon v. Barnhart, 81 F. App'x 410, 411 n.1 (3d Cir. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994)); Baltierra v. Chater, 70 F.3d 1268, 1995 WL 696740, at *1 (5th Cir. Oct. 19, 1995) (citing Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989)); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *1 (5th Cir. Apr. 5, 2001) (citing Haywood, 888 F.2d at 1467).

[2]The five-step analysis requires consideration of the following:
First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).
Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).
Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).
Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).
Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

---

assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

6

B.    Factual Background

Sullivan testified that she is 51 years old, has a master's degree in social work and lives with her parents and 14-year-old child in Covington, Louisiana. (Tr. 167-68). She stated that she worked as a mental health professional for eight years and that she was at her last job for 18 months, ending on September 21, 2011. Her attorney then amended her alleged onset date to September 21, 2011. (Tr. 168-69). She said she previously did clerical work at a law firm for three years, ending around 2000 or 2001, and then she took care of her father for two years. (Tr. 169-70).

Plaintiff testified that "nerve damage at the root" has caused pain in her legs and feet for the past one and one-half years. She stated that her medications have affected her mentally and physically. She said she has a noise in her head that causes her to lose about 30 percent of her hearing and she cannot use the phone because she cannot understand the bass and the treble is too high. Her attorney noted that Sullivan had not yet been treated for her hearing problem, but had an appointment for that. (Tr. 170).

Sullivan stated that a neurologist in Houma, Louisiana, classified her nerve damage as peripheral nerve and chronic partial denervation, radiculopathy, a pinched nerve and a herniated disc. She testified that, in August 2011, her neurologist offered her epidural injections, which cost $600 over a six-week period. She stated that she had no family present during this time to help her if she had a reaction to the treatment.

7

Plaintiff said she moved in with her parents in October 2011 and began attending counseling for depression.  She stated that she started going to LSU Bogalusa Medical Center ("LSU Bogalusa") for treatment in January 2012, which was the first appointment she could get.  When asked how often she attends counseling, Sullivan responded that she is waiting for a new counselor because she had a personality conflict with her current counselor, whom she felt was not talking to her or helping her deal with her pain and job loss.  (Tr. 171-72).  Plaintiff confirmed that she told her counselor that she had interviewed for social work jobs in the mental health sector, similar to her previous job in Thibodaux, which would allow her a flexible schedule of about 20 hours per week. She stated that she is physically incapable of working full-time.  (Tr. 172).

Sullivan testified that she takes Lamictal,[3] propanolol[4] and Tramadol.[5]  She said she sees a chiropractor and last saw him about two weeks earlier.  She stated that she saw a doctor at LSU for her back about a month ago.  (Tr. 172-73).  She said that an MRI of

[3]Lamictal (generic name:  lamotrigine) is "used alone or in combination with other medicines to treat certain types of seizures in adults and children.  It is also used for long-term treatment of bipolar disorder in adults."  PDRhealth (PDR Network, LLC), http://www.pdrhealth.com/drugs/lamictal (visited July 30, 2014).

[4]Propranolol (Brands:  Inderal, Inderal LA and InnoPran XL) is used to treat tremors, angina, hypertension, heart rhythm disorders and other heart or circulatory conditions.  It is also used to treat or prevent heart attack and to reduce the severity and frequency of migraine headaches.  Everyday Health (Everyday Health Media, LLC 2014), http://www.everydayhealth.com/drugs/propranolol (revision date 5/15/2013) (visited July 30, 2014).

[5]Tramadol hydrochloride is a centrally acting, synthetic opioid analgesic that "is indicated for the management of moderate to moderately severe chronic pain in adults who require around-the-clock treatment of their pain for an extended period of time."  Physicians' Desk Reference 2519, 2520 (66th ed. 2012).

her lumbar spine was done in January 2011 by Dr. Charlet, a Houma neurologist.  When the ALJ said that the MRI report showed a small central herniation that did not produce significant canal stenosis, plaintiff responded that Dr. Charlet did not tell her that.  She testified that she last saw a Dr. "Hayvill" (may be Haydel) in late September 2011 because her insurance ran out and she moved to Covington to be with family.  (Tr. 173).

Sullivan testified that she has trouble with her hands, especially her thumb, middle and pointing fingers on the left hand, so that she cannot pick up objects.  She said she has told her treating physician's assistant in Bogalusa about her hand problems, but that the physician's assistant can only address one thing at a time, so her health care providers have been focusing on her back and leg pain.  (Tr. 174-75).

Plaintiff stated that, on a typical day, she wakes up at 6:00 a.m., eats breakfast, prepares lunch for her daughter and drives her daughter to the bus stop or school.  She said she performs light chores and grocery shopping, if necessary.  Sullivan said she drives her daughter to various appointments and after-school activities in the afternoons, which sometimes aggravates her back, depending on the condition of the streets.  She stated that she cooks dinner twice a week, she and her daughter do the shopping together, but her daughter does the dishes and laundry.  She testified that she does not visit family or friends or attend church.  (Tr. 175).  She stated that her parents hire someone to do the yard work.  (Tr. 175-76).

Plaintiff said she used to make jewelry, but is not interested in it now. She testified that she isolates in her room a couple of times a week and that she has migraines at least once or twice a week. Sullivan said she drives and can walk to the corner of her street or from one side of Walmart to the other and back while shopping. She stated that she can stand for 30 minutes if she can shift around or take a few steps, and can sit for 45 minutes without the aid of her "saddle," a device that relieves the pressures of sitting. She testified that, when pressure on the back of her leg or buttocks becomes unbearable, she must stand up or lie down to alleviate the pressure. She said she was in pain while sitting in the hearing. She stated that she can lift a gallon of milk. (Tr. 176).

Regarding her depression, plaintiff testified that she is not the person she used to be and that she is prone to anger, crying and isolation. She said she no longer visits friends. She testified that she stopped working because of both her physical and mental conditions. She stated that the antidepressants she took caused a lack of sleep and that fatigue and migraines made her unable to concentrate. She testified that her depression and her medications made her an uncaring person, which was inappropriate for her profession of social worker. She said she wanted to return to work one day. (Tr. 177).

Plaintiff testified that she was last seen at the mental health clinic at the end of May 2012. (Tr. 178-79). She confirmed that Dr. Hoffman decided at that time not to prescribe any more medications for her because of the reactions she was having. She said she has not tried the fish oil that he suggested she take, but she has been doing

10

stretching exercises to loosen up the muscles in her calves and feet.  Sullivan stated that she asked her doctor at LSU Bogalusa whether she should exercise as Dr. Hoffman recommended, and the LSU doctor told her to ask a physical therapist.  Plaintiff said that she needs to wait for her doctor to refer her to physical therapy and that she is still waiting for a referral to a neurologist.  (Tr. 179).

      C.    <u>Vocational Expert Testimony</u>

A vocational expert, Crystal Younger, Ph.D., testified at the hearing that plaintiff's past work as a data entry clerk is semi-skilled, sedentary duty and her past job as a social worker is skilled and sedentary.  (Tr. 178).  The ALJ posed a hypothetical question of a person with plaintiff's age, education and past relevant work who can perform light work; can occasionally stoop, kneel, crouch or crawl; but cannot climb ladders, ropes or scaffolds or work on vibrating or uneven surfaces.  (Tr. 179).  Dr. Younger testified that such a person could perform plaintiff's past relevant work as a data entry clerk.  However, she said that the job of social worker involves walking, possibly on uneven concrete, to client's houses.  (Tr. 180).

The ALJ added to the hypothetical a limitation that the work must be simple and routine with no public contact.  Dr. Younger testified that such an individual could not perform plaintiff's skilled or semi-skilled past work.  She said that the light, unskilled jobs of office clerk, stock clerk/order filler and dishwasher satisfy these limitations and exist in significant numbers in the local and national economy.  (Tr. 180-81).

Plaintiff's attorney added another limitation to the ALJ's hypothetical, that the individual would be unable to maintain concentration, persistence and pace for up to one-third of the day.  Dr. Younger testified that a person who is unable to work for one-third of the day due to a lack of concentration, persistence and pace would not fulfill the job requirement to work the hours assigned.  Dr. Younger stated that someone who cannot do her job for one-third of the day would be unable to perform any job.  (Tr. 181-82).

Plaintiff's attorney stated that x-rays of Sullivan's lumbar spine and hands had been taken at LSU Bogalusa (also known as Washington Saint Tammany Regional Medical Center) and that the results were not available yet.  The attorney stated that the tests may show some severe degenerative changes that could reduce Sullivan's residual functional capacity to sedentary.  The ALJ agreed to hold the record open for 10 days to receive the additional evidence.  (Tr. 182-83).

D.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 154-56).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.     Plaintiff's Appeal

     1.     The Appeals Council did not fail to evaluate new and material evidence.

Sullivan contends that the Appeals Council failed to consider medical evidence from LSU Bogalusa that was dated during the relevant time period (Tr. 9-75), but was unavailable at the time of the hearing, which she says she submitted to the agency after the ALJ's decision.  She argues that, if the Appeals Council had considered the record with the new evidence, it would have found that she is capable only of sedentary work, which would require a finding of disability under the Medical-Vocational Guidelines. She points out that, although the new LSU Bogalusa records are in the administrative transcript, they were not marked "received" by the agency and were not assigned an exhibit number, as is customary with all evidence submitted.  The Appeals Council did not mention the new evidence in its order denying review or in its attached "AC Exhibits List," which lists only plaintiff's attorney's brief dated December 19, 2012.  (Tr. 1-5).

Sullivan cites no evidence to establish either when she submitted or the agency received the new records.  The first page of these medical records is a copy of a letter from plaintiff's attorney to LSU Bogalusa dated August 27, 2012, requesting all records dated after March 7, 2010.  The letter is stamped "received," presumably by LSU Bogalusa's medical records custodian, on September 5, 2012, and contains handwritten notations of plaintiff's patient number and "scanned 10/5/12," which were also

presumably added by LSU Bogalusa.  (Tr. 9).  The medical records located behind the letter in the transcript are dated between January 11 and September 10, 2012.  (Tr. 12-75).

The transcript contains a letter dated October 2, 2012, from plaintiff's attorney to the ALJ, stating that the LSU Bogalusa records were still not available because the records department had advised that it was running at least four weeks behind and could not provide a date when it would send the records.  The lawyer asked the ALJ to hold the administrative record open so he could submit the new evidence.  (Tr. 349).

On October 23, 2012, the ALJ issued her decision, which did not mention any new evidence.  Plaintiff's brief to the Appeals Council on December 19, 2012, does not state that any new evidence had been submitted after the ALJ's decision.  Her brief refers to a lumbar MRI from LSU Bogalusa that the attorney states was "from July 2012" (Tr. 353), but the cited report is actually dated September 10, 2012, four days after the hearing.  (Tr. 607).  The MRI results, along with reports of x-rays of plaintiff's hands dated July 30, 2012, are marked as Exhibit 20F in the transcript.  (Tr. 607-10).  The attorney argued that the ALJ  failed to discuss the MRI results that were in the record.  (A differently formatted, but textually identical, version of the MRI report was also included in the supposedly new, unmarked evidence, as were the same July 30, 2012 x-ray results.  (Tr. 53-55, 58-59)).  Therefore, the July 30 and September 10, 2012, test results were in the record that the ALJ and the Appeals Council considered, and

14

plaintiff's brief to the Appeals Council relied upon that evidence.  The lack of any reference to other new records in Sullivan's brief suggests that the new, unmarked evidence had not been received or submitted to the agency as of December 19, 2012. The Appeals Council denied plaintiff's request for review on November 18, 2013.

Based on this record, I cannot conclude that the LSU Bogalusa medical records at pages 9 through 75 of the administrative transcript (with the exception of the duplicates therein of the MRI and x-ray reports that are in Exhibit 20F) were submitted before the Appeals Council denied review.  Other apparently late-submitted medical records in the transcript are similarly not marked with any exhibit numbers, contain no indication when the agency received them and are not mentioned in the Appeals Council's order or exhibit list.  These records consist of a report from a podiatrist dated June 26, 2013 (Tr. 6-8), with no indication when his records were requested or received, and medical records from Culicchia Neurological Clinic dated November 7, 2012, through October 28, 2013.  (Tr. 76-144).  The Culicchia Clinic records contain a letter dated January 13, 2014, from plaintiff's attorney to the clinic requesting the records, which is stamped received by the clinic's records custodian on January 17, 2014 (Tr. 76), two months after the Appeals Council denied review.  The LSU Bogalusa records at pages 9 through 75 are bracketed in the transcript by these other late-submitted records.

Sullivan does not contend that the Appeals Council should have considered the Culicchia Clinic records, which, like the LSU Bogalusa records, lack any date of receipt

15

or exhibit number, but which, based on the date of the clinic's receipt of plaintiff's request for its records, must have been submitted <u>after</u> the Appeals Council denied review. However, Sullivan essentially asks the court to infer, without any evidentiary support, that the LSU Bogalusa records, which similarly lack a date of receipt or exhibit number and are in the transcript next to the Culicchia Clinic records, were submitted <u>before</u> the Appeals Council's decision. In the absence of any evidence of the actual submission date, a more plausible inference is that the LSU Bogalusa records, like the Culicchia Clinic records, were submitted <u>after</u> the Appeals Council denied review. Evidence that the Appeals Council never had an opportunity to consider can provide no basis to reverse or remand the Commissioner's final decision.

Even if the court assumes that plaintiff timely submitted the LSU Bogalusa records and the Appeals Council nonetheless failed to consider them, my review of the records indicates that plaintiff was not prejudiced by the failure and a remand is not required because the evidence was not new and material, and plaintiff has not demonstrated a reasonable possibility that it would have changed the outcome. <u>Lombard v. Astrue</u>, 246 F. App'x 875, 877-78 (5th Cir. 2007) (citing <u>Kane v. Heckler</u>, 731 F.2d 1216, 1219-20 (5th Cir. 1984)).

"The Appeals Council is permitted to consider additional evidence only if it is new, material, and related to the period on or before the ALJ's hearing decision."

Martinez v. Astrue, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 20 C.F.R. §§ 404.970(b), 404.976(b)); accord Bowman v. Heckler, 706 F.2d 564, 568 (5th Cir. 1983).

This court may remand for consideration of additional evidence only upon a showing that the evidence is new and material, and that good cause exists for plaintiff's failure to incorporate it into the record in a prior proceeding.  42 U.S.C. § 405(g); Ferrari v. Astrue, 435 F. App'x 314, 314 (5th Cir. 2010); Joubert v. Astrue, 287 F. App'x 380, 383 (5th Cir. 2008) (citing Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995)); Martinez, 252 F. App'x at 587 (citing Haywood, 888 F.2d at 1471).

"Evidence that was not in existence at the time of the administrative . . . proceedings, meets the 'new' requirement for remand to the Secretary."  Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quotation omitted) (citing Haywood v. Sullivan, 888 F.2d 1463, 1471 (5th Cir. 1989)).  However, evidence that "is merely cumulative of that already in the administrative record is not 'new' evidence that would support a remand under § 405(g)."  Wilson v. Astrue, No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v. Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987)) (emphasis added); accord Ferrari, 435 F. App'x at 314-15; Perkins v. Shalala, No. 93-01940, 1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Bowman, 706 F.2d at 568.

New evidence must also be material to be the basis for a remand.  The "materiality inquiry requires determining whether the evidence relates to the time period for which

17

the disability benefits were denied." Castillo v. Barnhart, 325 F.3d 550, 551-52 (5th Cir. 2003) (citing Ripley, 67 F.3d at 555); accord Joubert, 287 F. App'x at 383.  Thus, the new evidence cannot merely concern an after-acquired disability or the deterioration of a condition that was not previously disabling.  Id.; Garson, 162 F. App'x at 303.

"For new evidence to be material, there must exist the reasonable possibility that it would have changed the outcome of the Secretary's determination." Hunter v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008) (quotation omitted) (citing Latham v. Shalala, 36 F.3d 482, 483 (5th Cir. 1994)); accord Jones v. Astrue, 228 F. App'x 403, 406 (5th Cir. 2007) (citing 28 U.S.C. § 405(g)).

The mere "fact that evidence is 'new', meaning that it did not exist at a point in time such that it could have been incorporated into the administrative record, does not, by itself, constitute good cause for failing to incorporate such evidence into the administrative record."  Wilson, 2009 WL 2341803, at *4 (citing Pierre, 884 F.2d at 803).  "To demonstrate good cause, the claimant must provide an excusable explanation for not submitting the records earlier in the proceeding." Dennison v. Astrue, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing Pierre, 884 F.2d at 803; Skalij, 1996 WL 731580, at *3); see also Mouser v. Astrue, 545 F.3d 634, 637 (8th Cir. 2008) ("Good cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation.") (quotation and citation omitted).

18

The LSU Bogalusa records are dated between January 11 and September 10, 2012, all pre-dating the ALJ's October 23, 2012, decision. Therefore, the records are not "new" and Sullivan has not shown good cause for failing to incorporate them into the record earlier. Her attorney's failure to request the additional records until August 27, 2012, in a letter that was received by the medical records custodian one day before the administrative hearing, is not good cause to justify a remand. Taylor v. Comm'r of Soc. Sec., 43 F. App'x 941, 943 (6th Cir. 2002); York v. Colvin, No. 3:13-CV-918, 2014 WL 1050625, at *6 (S.D. Miss. Mar. 17, 2014) (citing Lister v. Astrue, No. 3:10CVI436-BD, 2011 WL 4424390, at *8 (N.D. Tex. Sept. 22, 2011) (citing Geyen v. Sec'y of Health & Human Servs., 850 F.2d 263, 264 (5th Cir. 1988))); Albritton v. Astrue, No. 3-10-CV-1860-BD, 2012 WL 1019610, at *8 (N.D. Tex. Mar. 27, 2012) (citing Pierre, 884 F.2d at 803; Geyen, 850 F.2d at 264); Brickey on Behalf of Perez v. Bowen, 722 F. Supp. 318, 323 (S.D. Tex. 1989).

Even if plaintiff had good cause for her late submission, the "new" records are merely cumulative of medical evidence that was in the record that the ALJ and the Appeals Council considered. Progress notes from LSU Bogalusa in January and March 2012 (Tr. 28-31), an MRI of plaintiff's lumbar spine on September 10, 2012 (Tr. 53-54), and x-rays of plaintiff's hands on July 30, 2012 (Tr. 58-59), contained in the "new" evidence are duplicates of reports that are in the record. (Tr. 496-99, 607-10). The failure of the ALJ and the Appeals Council to mention the September 2012 MRI results

does not mean that they did not consider the entirety of the evidence.  To the extent that the MRI might reflect a slight worsening of plaintiff's back condition, substantial evidence supports a finding that it represents the deterioration of a condition that was not previously disabling.  The remaining progress notes in the new LSU Bogalusa records document many of the same types of complaints, clinical findings, diagnoses and treatments reflected in the records that the ALJ and the Appeals Council reviewed.  In these circumstances, plaintiff has not shown a reasonable possibility that the supposedly new records from LSU Bogalusa would have changed the outcome.

Accordingly, this assignment of error lacks merit.

2.     The ALJ applied the applicable legal standard for severity and did not deny benefits at step two of the sequential analysis.

At step two of the sequential evaluation, the ALJ found that plaintiff has severe impairments consisting of fibromyalgia, mild polyneuropathy[6] and major depressive disorder.  Sullivan argues that the ALJ erred by failing to include lumbar degenerative disc disease and radiculopathy[7] among her severe impairments.

---

[6]Polyneuropathy is literally "[a] disease process involving a number of peripheral nerves," but the term is mostly used for "[a] nontraumatic generalized disorder of peripheral nerves, affecting the distal fibers most severely, with proximal shading (e.g., the feet are affected sooner or more severely than the hands), and typically symmetrically . . . ." Stedmans Medical Dictionary (27th ed. 2000), on Westlaw at STEDMANS 325870.  The peripheral nervous system is "the part of the nervous system that is outside the central nervous system and comprises the cranial nerves excepting the optic nerve, the spinal nerves, and the autonomic nervous system." MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/peripheral (visited Aug. 1, 2014).

[7]Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedmans Medical Dictionary, STEDMANS 347610.  The spinal cord is part of the central nervous system. MedlinePlus Medical

"The severity of an impairment is measured in terms of its effect on the claimant's ability to work.  A mere diagnosis is insufficient to establish that an impairment is severe because it does not reveal the extent to which the impairment limits the claimant's ability to work."  Stone v. Astrue, No. 8:12-cv-35-T-17TBM, 2013 WL 1212889, at *6 (M.D. Fla. Feb. 26, 2013), report & recommendation adopted, 2013 WL 1212881 (M.D. Fla. Mar. 25, 2013) (citing Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005)); accord Casares v. Astrue, No. 4:11CV162, 2013 WL 960229, at *6 (S.D. Miss. Feb. 25, 2013), report & recommendation adopted, 2013 WL 960186 (S.D. Miss. Mar. 12, 2013); Morris v. Astrue, No. 4:11-CV-631-Y, 2012 WL 4468185, at *8 (N.D. Tex. Sept. 4, 2012), report & recommendation adopted, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012) (citing Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999)).

In the Fifth Circuit, "[a]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'"  Herrera v. Comm'r of Soc. Sec., 406 F. App'x 899, 902 n.1 (5th Cir. 2010) (quoting Loza v. Apfel, 219 F.3d 378, 391 (5th Cir. 2000)); accord Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).  The ALJ in the instant case cited the relevant standard and explained why she found that Sullivan's impairments other than fibromyalgia, mild polyneuropathy and major depressive disorder were not severe.

---

Dictionary, http://www.merriam-webster.com/medlineplus/central%20nervous (visited Aug. 1, 2014).

When the ALJ has proceeded beyond step two to find that plaintiff is not disabled at a subsequent step, plaintiff's argument that the ALJ failed at step two to find that a particular impairment is severe

> is inapposite because the ALJ did not [deny] plaintiff's benefits based on a finding that her impairments are not severe. See Chapparo v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987) (argument regarding improper application of Stone standard irrelevant to disposition of case if outcome of case [did] not turn on issue of severity); see also Shipley v. Director of Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987). The ALJ's report contains a statement of the Stone standard and a determination that as it applied to this case, [one of claimant's several alleged impairments] is a severe impairment. . . . The ALJ then proceeded to the next step of the sequential evaluation and assessed whether an impairment or a combination of plaintiff's impairments met or exceeded the severity of the impairments listed in the appendix. See 20 C.F.R. § 404.1594(f)(2). In the absence of a "non-severe" finding as to any one of plaintiff's impairments and a decision to [deny] plaintiff's benefits based on a "non-severe" finding, plaintiff cannot complain that any prejudice resulted from the ALJ's performance at this stage in the evaluation. See Brock v. Chater, 84 F.3d 726, 729 (5th Cir. 1996) (decision will not be reversed where claimant makes no showing that she was prejudiced by deficiencies she alleges).

Lawrence v. Barnhart, No. 01-1366, 2002 WL 356316, at *2 (E.D. La. Mar. 4, 2002); see also Taylor v. Astrue, 706 F.3d 600, 603 (5th Cir. 2012) ("any error by the ALJ in not following the procedures set out in Stone [at step two] is harmless" when the ALJ found at step five that plaintiff was not disabled by his severe impairments); Bradshaw v. Astrue, No. 1:07-CV-0150-C, 2008 WL 4387087, at *6 (N.D. Tex. Sept. 26, 2008) (citing Robinson v. Barnhart, 183 F. App'x 451, 455 (5th Cir. 2006); Reyes v. Sullivan, 915 F.2d 151, 154 n.1 (5th Cir. 1990); Chapparo, 815 F.2d at 1011) ("In more recent

cases, the Fifth Circuit has found no merit to claimants' arguments of ALJ error arising out of the failure to correctly apply or state the <u>Stone</u> standard where the sequential evaluation process proceeds past step 2.").

"Because the ALJ did not summarily dispose of Plaintiff's claims at Step Two, but instead determined that Plaintiff had at least one severe impairment and proceeded to Step Four to determine that Plaintiff was not disabled, the proper focus here is whether substantial evidence supports the ALJ's residual functional capacity (RFC) assessment and ultimate determination that Plaintiff was not disabled." <u>Lavery v. Astrue</u>, No. V-11-3, 2012 WL 3276711, at *5 (S.D. Tex. Aug. 8, 2012) (citing <u>Chaparro</u>, 815 F.2d at 1011) (footnote omitted).

Having found that Sullivan had severe impairments, the ALJ proceeded through the subsequent steps of the evaluation, considered all of the evidence of plaintiff's medically determinable impairments and found at the fifth step that Sullivan is capable of performing available jobs. The ALJ's failure to find at step two that plaintiff's lumbar impairments are severe is irrelevant and non-prejudicial to Sullivan.

Even if the court were to review the ALJ's step two determination, substantial evidence supports her finding that plaintiff's spinal disorder is not severe for the reasons cited in the ALJ's opinion, as discussed in the next section of this report and recommendation. Accordingly, this assignment of error is meritless.

3.    Substantial evidence supports the ALJ's residual functional capacity finding.

At the fourth step of the sequential analysis, the ALJ found that Sullivan has the residual functional capacity to perform light work,[8] except that she cannot climb ladders, ropes or scaffolds or work on vibrating and uneven surfaces; she can occasionally stoop, kneel, crouch and crawl; and the work must be of a simple routine nature with no public contact.  Plaintiff argues that the ALJ failed to discuss the most recent diagnostic studies and failed to incorporate into her residual functional capacity additional abnormalities and worsening of existing abnormalities reflected in these studies.  She contends that additional limitations are supported by the "new" LSU Bogalusa medical records that were submitted after the ALJ's decision.  Sullivan argues that a proper evaluation of her combined impairments compels a finding that she can work only at the sedentary level, which renders her disabled under Rule 201.14 of the Medical-Vocational Guidelines.

Substantial evidence supports the ALJ's residual functional capacity determination.  The medical evidence is voluminous and the ALJ's summary of the evidence was thorough and substantially accurate.  As the ALJ stated, the medical

---

[8]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).

evidence does not substantially support the extreme pain and functional limitations that Sullivan alleges result from her medical conditions.

Plaintiff emphasizes that the ALJ did not mention either her September 8, 2011, electromyography/nerve conduction study ("EMG") results or her September 10, 2012, lumbar MRI results. Both of those test reports were in the record that the ALJ reviewed, and they are not inconsistent with the ALJ's residual functional capacity findings.

The EMG demonstrated polyneuropathy, which the ALJ accepted as a severe impairment, and mild, partial radiculopathies at the L5 spinal level. (Tr. 598). The evidence of mild, partial radiculopathy was new. Based on an EMG done on January 13, 2011, plaintiff's neurologist ruled out lumbar radiculopathy. (Tr. 398, 401). The 2012 MRI revealed a minimally bulging lumbar disc at L3-4 without significant central canal stenosis[9] or neural foraminal[10] narrowing; a minimally bulging lumbar disc at L4-5 without significant central canal stenosis and with mild neural foraminal narrowing; and a minor L5-S1 disc bulge with focal posterior annular fissure and mild to moderate neural foraminal narrowing, but no significant central canal stenosis. (Tr. 607). The mild bulges at L3-4 and L4-5 appear to be new results, while the L5-S1 results appear to be

---

[9]Spinal stenosis is "narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space; symptoms are caused by compression of the cauda equina and include pain, paresthesias, and neurogenic claudication." Dorland's Illustrated Medical Dictionary 1698 (29th ed. 2000).

[10]A foramen is "any of the openings that give passage to the spinal nerves from the vertebral canal and are formed by the juxtaposition of superior and inferior notches in the pedicles of contiguous vertebrae." MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/foramen.

consistent with the previous MRI on January 10, 2011. (Tr. 408). Both MRI's found no significant canal stenosis at any level.

These minor, minimal and mild objective findings on diagnostic testing, combined with the generally normal findings at the majority of plaintiff's physical examinations and her activities of daily living, are substantial evidence on which the ALJ could rely in making her residual functional capacity assessment. Neither the diagnoses of radiculopathy nor of slightly more bulging discs than in earlier studies undermines the ALJ's residual functional capacity determination in the absence of objective evidence of a severe impairment and of credible evidence of more severe functional limitations.

Because the record contained ample evidence on which to base a decision, the ALJ's failure to discuss the test results specifically does not prejudice Sullivan.

> "Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected." [Plaintiff] has noted several occasions where the ALJ did not thoroughly address each aspect of the record. Yet when dealing with such an extensive and multi-faceted record, there will always be some evidence that is not specifically discussed in the Commissioner's decision. Our review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record.

Giles v. Astrue, 433 F. App'x 241, 251 (5th Cir. 2011) (quoting Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989)) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)). Accordingly, this assignment of error lacks merit.

CONCLUSION

The Appeals Council did not fail to evaluate new and material evidence that was submitted to it, as the evidence does not establish that the evidence was received before the Appeals Council's decision.  Even if plaintiff timely submitted the additional records from LSU Bogalusa and the Appeals Council failed to consider them, she was not prejudiced because the evidence was not new and material, and she has not demonstrated a reasonable possibility that the evidence would have changed the outcome.  The ALJ's finding that plaintiff's lumbar degenerative disc disease and radiculopathy are not severe impairments is irrelevant and non-prejudicial when the ALJ proceeded to step five before finding that she is not disabled.  Substantial evidence supports the ALJ's finding that Sullivan has the residual functional capacity to perform light work with the limitations noted in the ALJ's decision.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[11]

 

New Orleans, Louisiana, this ___6th___ day of August, 2014.

 

 

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[11]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.